UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

_____ :
                                            :
SAMAD DAROUIAN,                             :
                    Plaintiff               :          CIVIL NO. 302CV927(RNC)
                                            :
                                            :
        v.                                  :
                                            :
                                            :
HP HOOD, INC., 1 TOM MEDLOCK,               :
NED KERSHNER, NANCY CARROLL,                :
AND MARGARET POOLE,                         :
                    Defendants.             :          July 15, 2004
                                            :
_____ :


**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**


DEFENDANT,
HP HOOD LLC, TOM MEDLOCK,
NED KERSHNER, NANCY CARROLL
AND MARGARET POOLE


Tasos C. Paindiris (ct 16739)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT  06105
Tel: (860) 522-0404
Fax: (860) 247-1330
paindirt@jacksonlewis.com

---

1  Plaintiff's former employer and the proper Defendant is HP Hood LLC, which was formerly known as HP Hood Inc.  On April 5, 2004, the company changed its name to HP Hood LLC.  There no longer is a legal entity with the name "HP Hood Inc."

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

I.     PRELIMINARY STATEMENT .................................................................................1

II.    SUMMARY OF ARGUMENT ..................................................................................2

III.   SUMMARY OF FACTS AS DETAILED IN LOCAL RULE 56(a)(1) STATEMENT.....3

IV.    PROCEDURAL BACKGROUND..............................................................................7

V.     STANDARD OF REVIEW .......................................................................................7

VI.    LEGAL ARGUMENT................................................................................................8

       A.   HP Hood Is Entitled To Summary Judgment As To Count One (Violation Of
            Title VII) Because Plaintiff's Claims Are Untimely And He Has No Evidence
            Of National Origin Discrimination ...........................................................................8

            1.   Plaintiff's Untimely Claims Must Be Dismissed........................................9

            2.   Plaintiff's Remaining Claims of National Origin
                 Discrimination Are Baseless....................................................................10

                 a.   Plaintiff Was Not Harassed On The Basis
                      Of His National Origin..................................................................12

                 b.   Plaintiff Received Frequent Training From HP Hood..................14

                 c.   There Is No Evidence That Plaintiff Was Not
                      Promoted Because of His National Origin....................................15

                 d.   HP Hood Documented Plaintiff's Poor Performance And
                      Ultimately Discharged Him For A Legitimate, Nondiscriminatory
                      Reason -- His Failure To Properly Perform His Job Duties
                      Properly Despite Repeated Training..............................................16

                 e.   Plaintiff Offers No Evidence That HP Hood's Legitimate,
                      Nondiscriminatory Reason Is A Pretext For Discrimination........19

       B.   HP Hood Is Entitled To Summary Judgment As To Count Two (Violation Of
            Section 1981) Because Defendants Did Not Discriminate Against Plaintiff On
            The Basis of His Race .........................................................................................20

C.    HP Hood Is Entitled To Summary Judgment As To Count Three
      (Violation Of The ADEA) Because Plaintiff's Claims of Age Discrimination
      Are Meritless...........................................................................................22

D.    Count Four (Retaliation In Violation Of Title VII, the ADEA,
      and Section 1981) Should Be Dismissed Because HP Hood Did
      Not Retaliate Against Plaintiff.............................................................25

      1.    Plaintiff Offers No Evidence To Show That He Was Retaliated
            Against In Violation of Title VII or The ADEA.........................................25

      2.    Plaintiff Lacks Standing to Raise a Viable Section
            1981 Retaliation Claim ..............................................................27

E.    Count Five (Violation Of Conn. Gen. Stat. § 31-51q) Should Be Dismissed
      Because Plaintiff's Claim Is Preempted By Federal Law And He Cannot
      Show Retaliatory Discharge, And HP Hood Should Be Awarded Costs and
      Attorney's Fees For Defending An Unjustified Claim.........................................28

      1.    Plaintiff's Claim Of Retaliatory Discharge For Engaging
            In Union Organizing Activity Is Preempted By The National Labor
            Relations Act..........................................................................29

            Plaintiff Cannot Show A Causal Connection Between His
            Complaint About A Laboratory Result And His Discharge .....................30

            HP Hood Entitled To Costs And Attorney's Fees Because Plaintiff
            Brought a Claim Under Conn. Gen. Stat. § 31-51q Without
            Substantial Justification .............................................................31

F.    Count Eight (Defamation) Warrants Dismissal Because Defendants
      Did Not Publicize An Unprivileged False Statement ...........................................32

      1.    Plaintiff Cannot Show Any Defamatory Discussions By
            Defendants Regarding His Job Performance .............................................34

      2.    Ms. Carroll's Statements About The Plant Shutdown
            Were Not Defamatory...................................................................34

      3.    Dr. Poole's Request That Plaintiff Return Formula Taken
            From HP Hood Was Not Defamatory........................................................35

      4.    No Defamatory Statement Was Made to Plaintiff
            During His Discharge ..................................................................36

      5.    Plaintiff Has No Evidence That Defendants Spread A Rumor
            About Him To His Former Co-Workers Or To Any Employers...............36

6.      Plaintiff's Claim of "Compelled Self-Defamation" Fails Because
               Connecticut Does Not Recognize Such A Cause of Action .....................36

G.      Count Nine (Intentional Infliction Of Emotional Distress) Should
        Be Dismissed His Claims are Untimely And Defendants Did Not
        Engage In Any Extreme And Outrageous Behavior..............................................37

               Plaintiff's Claim As To Ned Kershner Should Be Dismissed
               Because It Is Barred By The Statute Of Limitations .................................37

               Plaintiff's Remaining Claims Must Be Dismissed Because He
               Does Not Allege Any Extreme And Outrageous Behavior .....................37

VII.    CONCLUSION...............................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) .......................................................8

<u>Bimler v. Stop & Shop Supermarket Co.</u>, 965 F. Supp. 292 (1997) ..........................29, 30

<u>Brennan v. Metropolitan Opera Ass'n</u>, 192 F.3d 310 (2d Cir. 1999) ...............................23

<u>Butts v. New York Dep't of Hous.</u>, 990 F.2d 1397 (2d Cir. 1993) ....................................9

<u>Byrnie v. Town of Cromwell Pub.</u>, 73 F. Supp. 2d 204 (D. Conn. 1999) .........................19

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), <u>cert. denied</u>, 484 U.S. 1066 (1988) .......7, 8

<u>Choudhury v. Polytechnic Institute of New York</u>, 735 F.2d 38 (2d Cir. 1984) ...............28

<u>Clark County School District v. Breeden</u>, 532 U.S. 268 (2001) .................................26, 27

<u>Cruz v. NYC Human Resources Admin. Dep't of Social Servs.</u>,
    82 F.3d 16 (2d Cir. 1996) ...........................................................................................10

<u>DeLeon v. Little</u>, 981 F. Supp. 728 (D. Conn. 1997) .......................................................39

<u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998).....................................................12

<u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91 (2d Cir. 2001)...........................................11

<u>Fisher v. Vassar College</u>, 114 F.3d 1332 (2d Cir. 1997),
    <u>cert. denied</u>, 522 U.S. 1075 (1998) .............................................................................10

<u>Giordano v. Gerber Scientific Products, Inc.</u>, No. 399CV00712,
    2000 U.S. Dist. LEXIS 22178 (D. Conn. Nov. 14, 2000),
    <u>aff'd</u>, 24 Fed. Appx. 79 (2d Cir. 2001) ..................................................................24, 25

<u>Ghose v. Century 21, Inc.</u>, 12 Fed. Appx. 52 (2d Cir. 2001)...........................................21

<u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14 (2d Cir. 1995) ...............10

<u>Graefenhain v. Pabst Brewing Co.</u>, 827 F.2d 13 (7th Cir. 1987).....................................23

<u>Harris v. Forklift System, Inc.</u>, 510 U.S. 17 (1993)....................................................12, 13

<u>Hawkins v. 1115 Legal Serv. Care</u>, 163 F.3d 684 (2d Cir. 1998) ...............................27, 28

Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) ............................................................22

Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001) ...........................................14

Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117 (D. Conn. 1998) .........................38

Hughes v. Derwinski, 967 F.2d 1168 (7th Cir. 1992)..................................................26, 27

Knight v. U.S. Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986),
    cert. denied, 480 U.S. 932 (1987) ................................................................................8

Lizardo v. Denny's, Inc., 270 F.3d 94 (2d Cir. 2001) ..................................................12, 19

Lowe v. Amerigas, Inc., 52 F. Supp. 2d 349 (D. Conn. 1999),
    aff'd, 208 F. 3d 203 (2d Cir. 2000) ...........................................................................30

Manning v. Metropolitan Life Ins. Co., 127 F.3d 686 (8th Cir. 1997)............................28

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ......................10, 11, 22, 25, 26

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    7 F.3d 1085 (2d Cir. 1993)...................................................................................20, 21

Millane v. Becton Dickinson & Co., 84 F. Supp. 2d 282 (D. Conn. 1999)......................24

NLRB v. Oakes Machine Corp., 897 F.2d 84 (2d Cir. 1990).....................................29, 30

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).................................9

Norton v. Sam's Club, 145 F.3d 114 (2d Cir.),
    cert. denied, 525 U.S. 1001 (1998) ..........................................................................23

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998) ..................................13

Ost v. West Suburban Travelers Limousine, Inc., 88 F.3d 435 (7th Cir. 1996)...............19

Perry v. Ethan Allen, Inc., 115 F.3d 143 (2d Cir. 1997)...................................................12

Reed v. Town of Branford, 949 F. Supp. 87 (D. Conn. 1996)...........................................38

Reeves v. Sanderson Plumbing Prods., 530 U.S. 133 (2000)..............10, 11, 12, 19, 20, 22

San Diego Bld. Trades Council v. Garmon, 359 U.S. 236 (1959)....................................29

Sands v. Runyon, 28 F.3d 1323 (2d Cir. 1994) .................................................................14

Scaria v. Rubin, 117 F.3d 652 (2d Cir. 1997)....................................................................20

Shaare Teflia Congregation v. Cobb, 481 U.S. 615 (1987)...............................................21

Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir. 2001) ...............26, 27

St. Francis College v. Al-Khazraji, 481 U.S. 604 (1987) .................................................21

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)..................................................11, 22

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).........................................10

Thompson v. Service Merchandise, Inc., No. 396CV1602,
    1998 U.S. Dist. LEXIS 13669 (D. Conn. Aug. 11, 1998) ...........................................39

Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995)......................................12, 13, 25, 26

Torres v. Pisano, 116 F.3d 625 (2d Cir.),
    cert. denied, 522 U.S. 997 (1997) ...............................................................................13

Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985)...........................................22

United Air Lines v. Evans, 431 U.S. 553 (1977).................................................................9

Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2d Cir. 1996) .................................9

Woroski v. Nashua Corp., 31 F.3d 105 (2d Cir. 1994)......................................................22

## STATE CASES

Appleton v. Board of Educ. of Stonington, 254 Conn. 205 (2000) ....................................38

Cweklinsky v. Mobil Chem. Co., 267 Conn. 210 (2004) ...................................................37

Daley v. Aetna, 249 Conn. 766 (1999) ..............................................................................32

Dow v. New Haven Independent, Inc., 41 Conn. Supp. 31 (1987) .....................................33

Emanuele v. Boccaccio & Susanin, No. CV900379667,
    1994 Conn. Super. LEXIS 3156 (Conn. Super. Ct. Dec. 1, 1994) ..............................38

Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107 (1982)....................32

Grynkiewicz v. Freight Liner of Hartford, No. CV990497586,
    2000 Conn. Super. LEXIS 129 (Conn. Super. Ct. Jan. 12, 2000) ...............................33

Miles v. Perry, 11 Conn. App. 584 (1987)...................................................................32, 33

Olumide v. Travelers Insurance Co., No. CV910505575,
    1994 Conn. Super. LEXIS 265 (Conn. Super. Ct. Feb. 3, 1994)................................32

Perruccio v. Arseneault, 7 Conn. App. 389 (1986)........................................................32, 33

Petyan v. Ellis, 200 Conn. 243 (1986) ...............................................................................38

Rock v. Mott Metallurgical Corp., No. CV990492215,
    2001 Conn. Super. LEXIS 207 (Conn. Super. Ct. Jan. 10, 2001) ...............................39

Scandura v. Friendly's Ice Cream Corp., Inc., No. CV930529109,
    1996 Conn. Super. LEXIS 1642 (Conn. Super. Ct. June 26, 1996) .....................33, 36

Torok v. Proof, No. CV900113204, 1993 Conn. Super. LEXIS 266
    (Conn. Super. Ct. Feb. 1, 1993) ..............................................................................33, 34

Torosyan v. Boehringer Ingelheim Pharm., Inc., 234 Conn. 1 (1995) .......................34, 36

Wormley v. Blue Cross and Blue Shield of Conn., Inc., No. CV96368735,
    1996 Conn. Super. LEXIS 1550 (Conn. Super. Ct. Mar. 12, 1996) ...........................36

## FEDERAL STATUTES

29 U.S.C. § 151 et seq....................................................................................................3

29 U.S.C. § 157................................................................................................................29

29 U.S.C. § 158(a)(1)......................................................................................................29

29 U.S.C. § 160................................................................................................................29

29 U.S.C. § 623(a)(1).......................................................................................................22

29 U.S.C. § 623(d) ..........................................................................................................25

29 U.S.C. § 631 et seq......................................................................................................2

42 U.S.C. § 1981.......................................................................................................2, 7, 20

42 U.S.C. § 2000e et seq..................................................................................................2

42 U.S.C. § 2000e-2(a)(2)...............................................................................................10

42 U.S.C. § 2000e-3(a) ..................................................................................................25

42 U.S.C. § 2000e-5(e)(1)...............................................................................................9

Fed. R. Civ. P. 56(c) .......................................................................................................7

## STATE STATUTES

Conn. Gen. Stat. § 31-51q.................................................................2, 3, 7, 28, 30, 31, 32

Conn. Gen. Stat. § 52-577...............................................................................................37

## <u>OTHER</u>

Restatement 2d of Tort § 46, comment d (1965) ..............................................................38

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

———————————————————————————— :
                                                    :
SAMAD DAROUIAN,                                     :
                Plaintiff                           :       CIVIL NO. 302CV927(RNC)
                                                    :
                                                    :
        v.                                          :
                                                    :
                                                    :
HP HOOD, INC., [2] TOM MEDLOCK,                     :
NED KERSHNER, NANCY CARROLL,                        :
AND MARGARET POOLE,                                 :
                Defendants.                         :       July 15, 2004
                                                    :
———————————————————————————— :


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I.    PRELIMINARY STATEMENT

        Defendants, HP Hood LLC ("HP Hood"), Tom Medlock, Ned Kershner, Nancy

Carroll, and Margaret Poole, submit this Memorandum of Law in Support of their Motion for

Summary Judgment on Plaintiff Samad Darouian's ("Plaintiff") Amended Complaint with his

Seven remaining Counts.  As detailed below, there is no genuine issue as to any material fact that

would prevent the entry of summary judgment in this case.  Filed simultaneously herewith in

support of Defendants' Motion is their Local Rule 56(a)(1) Statement; Affidavits of Tasos C.

Paindiris, Esq., Dr. Margaret Poole, Ned Kershner, Tom Medlock, and Nancy Carroll; excerpts

from Plaintiff's April 8, 2004 and May 17, 2004 depositions; and other documentary exhibits.

---

[2]  Plaintiff's former employer and the proper Defendant is HP Hood LLC, which was formerly known as HP Hood Inc.  On April 5, 2004, the company changed its name to HP Hood LLC.  There no longer is a legal entity with the name "HP Hood Inc."

## II.    SUMMARY OF ARGUMENT

HP Hood terminated Plaintiff's employment after he made repeated mistakes despite regular training by the company.  Plaintiff, however, claims that that HP Hood harassed him, denied him training and a promotion, poorly evaluated his performance, and fired him because of his national origin, age, and free speech in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 631 et seq., 42 U.S.C. § 1981 ("Section 1981"), and Conn. Gen. Stat. § 31-51q.  Neither federal nor state law immunizes an individual from employment action taken against him because of poor job performance even if he is a member of a protected class.

The undisputed facts do not support a *prima facie* case of national origin and age discrimination under Title VII and the ADEA.  Plaintiff was not discriminatorily harassed and received more than adequate training.  Not only is Plaintiff's claim that he was denied a promotion in 1998 time-barred, he admits that he was not qualified for a promotion.  Plaintiff is also unable to identify any evidence showing that numerous different supervisors documented his poor job performance for a discriminatory purpose.  Moreover, Plaintiff cannot claim that he was discharged under any inference of discrimination when he continued to make mistakes after he repeatedly received training to help him improve.  Defendants have proffered a legitimate, nondiscriminatory reason – Plaintiff's poor performance -- for their employment decisions.  Plaintiff cannot to show pretext.

Similarly, Plaintiff is unable to state a *prima facie* Section 1981 case because he alleges national origin discrimination when the statute prohibits race discrimination.  Even if Plaintiff was protected by the statute, he cannot show any discriminatory conduct by Defendants.

Plaintiff is also unable to show that HP Hood retaliated against him for filing a complaint with the Connecticut Commission on Human Rights and Opportunities on March 24, 2000 because his discharge did not occur until nine months later, during which he made numerous mistakes. Plaintiff is precluded from raising a retaliation claim under Section 1981 because he did not state a cognizable discrimination claim under the statute.

Plaintiff's allegation that he was discharged in violation of Conn. Gen. Stat. § 31-51q for exercising his free speech by engaging in union organizing activity is preempted by the National Labor Relations Act of 1935, as amended ("NLRA"), 29 U.S.C. § 151 et seq. Even if the NLRA did not preempt his claim, he was not discharged for a retaliatory purpose, but rather for his well-documented performance problems. Likewise, Plaintiff's claim that he was retaliatory discharged for complaining that a laboratory test result was falsified is groundless when a full investigation showed that his claim was unjustified and he was not discharged until three months later. Because Plaintiff's claim under Conn. Gen. Stat. § 31-51q is wholly without justification, HP Hood seeks attorney's fees and costs.

Plaintiff also alleges common law claims of defamation and intentional infliction of emotional distress, but both claims are meritless because he cannot identify the publication of one unprivileged defamatory statement or any extreme and outrageous conduct.

These material facts are not in dispute and, accordingly, Defendants are entitled to summary judgment in this matter.

## III.    SUMMARY OF FACTS AS DETAILED IN LOCAL RULE 56(a)(1) STATEMENT

Beginning in about 1983, Plaintiff (age 63) worked for HP Hood as a laboratory technician at the company's Suffield, Connecticut plant which primarily produces ice cream

products.  (Local Rule 56a(a)(1) Statement ¶¶ 1-2, 5).[3]  Nancy Carroll (age 42) is employed at HP Hood as a senior laboratory technician who began supervising Plaintiff in 1996 and reports to Tom Medlock.  (Statement ¶ 10).  Mr. Medlock (age 56) is HP Hood's Quality Control Manager who reports to Dr. Margaret Poole, and supervised Plaintiff from August 1992 to November 1998 and June 1999 to December 2000.  (Statement ¶¶ 6-8).  Dr. Poole (age 47) is HP Hood's Vice President of Research and Development.  (Statement ¶ 11).  Mr. Kershner (age 61) was HP Hood's Director of Human Resources until his retirement in June 2004.  (Statement ¶ 9). Plaintiff was born in Armenia; and Ms. Carroll, Mr. Medlock, Dr. Poole, and Mr. Kershner were born in the United States; and all of the individuals are white.  (Statement ¶¶ 1, 6, 9-11).

Beginning in 1982, Plaintiff's various former supervisors documented his performance problems. (Statement ¶ 12).  In 1996, Plaintiff worked as a laboratory technician and his job duties included testing raw product to determine whether it is suitable; proficiency in all testing procedures used in the lab; and testing for HP Hood's weekly compliance program. (Statement ¶¶ 2, 15).  Although Mr. Medlock supervised Plaintiff during 1992 to 1998, Plaintiff alleges discriminatory treatment by Mr. Medlock during this time period only in 1996. (Statement ¶ 7-8, 13, 17).  Plaintiff alleges that Mr. Medlock's evaluation of his performance as "needs improvement" in 1996 was discriminatory.  (Statement ¶ 16).  Plaintiff also claims that in 1996, he was promoted to the position of lab inspector and then demoted because of his national origin, but the subsequent investigation showed that the claim was unfounded.  (Statement ¶ 14).

During Mr. Medlock's absence from November 1998 to June 1999, HP Hood's laboratory supervisor, Rich Brown, documented Plaintiff's poor performance in March 1999. (Statement ¶ 7-8, 18).  Plaintiff claims that Mr. Brown did not discriminate against him and

---

[3] A copy of Defendants' Local Rule 56(a)(1) Statement was filed simultaneously herewith.  Paragraphs of the Statement are hereinafter referenced as "Statement ¶ __."

describes him as an "honest" and "a good man" who "[does not] lie."  (Statement ¶ 19).

After Mr. Medlock returned to HP Hood in June 1999, Mr. Brown and Ms. Carroll helped Mr. Medlock evaluate Plaintiff's performance in October 1999 ("needs improvement") because they had worked with and trained Plaintiff in Mr. Medlock's absence. (Statement ¶¶ 21-22).  To help Plaintiff's performance improve, he received additional training with Mr. Brown, the trainer of his choice.  (Statement ¶ 23).  Prior to and during November 1999, Mr. Brown trained Plaintiff on the testing system and formulations.  (Statement ¶ 24). Despite of Plaintiff's training, Mr. Brown and Ms. Carroll separately documented his poor technique in performing tests.  (Statement ¶¶ 25-26).  As a result, Mr. Brown trained Plaintiff for two more days on testing procedures.  (Statement ¶ 27).

Plaintiff's performance did not improve and he received another written warning from Mr. Brown on January 24, 2000 for using the wrong laboratory test procedure.  (Statement ¶¶ 28-29).  Mr. Brown trained Plaintiff from January 2000 to March 2000.  (Statement ¶¶ 30-32).

On March 24, 2000, Plaintiff filed a charge with the Connecticut Commission on Human Rights ("CHRO").  (Statement ¶ 33).  He continued to receive training to help him improve his performance.  (Statement ¶¶ 33-35).  Plaintiff's performance problems continued and on March 31, 2000, Ms. Carroll documented Plaintiff's inability to apply proper the formulas.  (Statement ¶ 35).  On April 3, 2000, Mr. Medlock authorized two more weeks of training.  (Statement ¶ 36).

On May 1, 2000, Plaintiff reported to Ms. Carroll that the product was not pasteurized, which caused the production line to shut down and incurred substantial cost to HP Hood.  (Statement ¶ 37).  The third shift night cleanup crew was initially believed to have caused the mistake.  (Statement ¶ 38).  Later, Ms. Carroll discovered that the product was properly

pasteurized, but Plaintiff had applied the wrong test.  (Statement ¶ 38).

On September 14, 2000, Plaintiff informed Ms. Carroll that the product had the wrong amount of butterfat when it was actually within acceptable margins.  (Statement ¶ 39). Plaintiff complained to HP Hood's Vice President of Operations that Ms. Carroll changed the butterfat test result, and his claim was reported to Dr. Poole.  (Statement ¶¶ 40-41).  When Dr. Poole met with Plaintiff to investigate his allegation, Plaintiff told her that he was keeping documentation of testing procedures, formulas and results, and had saved a sample of the product.  (Statement ¶¶ 42-43).  Dr. Poole asked Plaintiff to return the documentation and results because all such information is confidential and proprietary trade secrets of HP Hood and could not be taken from the plant.  (Statement ¶ 43-44).

On or about October 13, 2000, Dr. Poole met with Plaintiff and Mr. Kershner to tell Plaintiff that his allegation was unsubstantiated and to discuss her concern that he was not properly performing routine laboratory procedures, resulting in low quality work and inconsistent test results.  (Statement ¶ 45).  On December 20, 2000, Dr. Poole met with Plaintiff and Mr. Kershner to discharge Plaintiff because of his poor job performance.  (Statement ¶ 47). Plaintiff does not deny that he made mistakes during his employment.  (Statement ¶ 48).

Plaintiff's first CHRO complaint dated March 24, 2000 which alleged, in part, that he was poorly evaluated, harassed, warned, not promoted, and provided with less training because of his national origin and age was dismissed, and his request for reconsideration was denied.  (Statement ¶¶ 49-51).  His second CHRO complaint which alleged retaliation was also dismissed on July 10, 2001.  (Statement ¶ 52).  On March 2, 2001, Plaintiff filed an affidavit alleging discrimination for union organizing activity with the National Labor Relations Board, who dismissed the complaint and denied his appeal of the dismissal.  (Statement ¶¶ 53-54).

## IV.    PROCEDURAL BACKGROUND

Plaintiff commenced this action by filing a complaint against HP Hood dated May 31, 2002.  HP Hood moved to dismiss all counts of the complaint on July 29, 2002.  On October 8, 2002, this Court denied the motion to dismiss as moot because Plaintiff filed the operative Amended Complaint on August 27, 2002, naming HP Hood, Tom Medlock, Ned Kershner, Nancy Carroll, and Margaret Poole as the defendants.  Defendants moved to dismiss Count Four (retaliation) as to the individually named Defendants; Count Five (violation of Conn. Gen. Stat. § 31-51q) as to the individually named Defendants; Count Six (wrongful termination) as to all Defendants; and Count Seven (breach of implied covenant of good faith and fair dealing) as to all Defendants.  On November 25, 2002, this Court granted Defendants' motion to dismiss.  The remaining counts of Plaintiff's Amended Complaint are:

| | |
|---|---|
| Count One | Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by HP Hood |
| Count Two | Violation of 42 U.S.C. § 1981 ("Section 1981") by all Defendants |
| Count Three | Violation of the Age Discrimination in Employment Act ("ADEA") by HP Hood |
| Count Four | Retaliation in violation of Title VII, Section 1981, and the ADEA by HP Hood |
| Count Five | Violation of Conn. Gen. Stat. § 31-51q by HP Hood |
| Count Eight | Defamation by all Defendants |
| Count Nine | Intentional Infliction of Emotional Distress by all Defendants |

On September 22, 2003, Defendants filed a motion to dismiss based on Plaintiff's failure to respond to discovery and failure to follow this Court's orders.  That motion is currently pending before the Court.

## V.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the record presented to the Court shows that there is no genuine issue as to any material fact in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986), cert. denied, 484 U.S. 1066 (1988).

"Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (citation omitted). Defendant's burden of establishing that there is no genuine issue of material fact in dispute is satisfied if it can point to an absence of evidence to support an essential element of Plaintiff's claim. Celotex Corp., 477 U.S. at 322-23. In order to defeat summary judgment, Plaintiff must present evidence that would be sufficient to support a jury verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will no be counted." Id. at 247-248 (emphasis in original). There are no material issues in dispute in this matter that would preclude the entry of summary judgment. Accordingly, Plaintiff's Amended Complaint should be dismissed.

## VI.    LEGAL ARGUMENT

### H.    HP Hood Is Entitled To Summary Judgment As To Count One (Violation Of Title VII) Because Plaintiff's Claims Are Untimely And He Has No Evidence Of National Origin Discrimination

Plaintiff alleges that HP Hood discriminated against him on the basis of his national origin in violation of Title VII. (Amended Complaint ¶ 20).[4] Specifically, Plaintiff claims that he was harassed; denied training and promotions; given poor performance

---

[4] A copy of the Amended Complaint is attached as Exhibit 1 to the Paindiris Affidavit, and hereinafter referenced as "Compl. ¶ __."

evaluations and disciplined for mistakes that were either inconsequential or caused by a lack of training, in part, because of his national origin.  (Compl. ¶¶ 3, 17).  He also claims he was ultimately discharged for discriminatory reasons.  (Compl. ¶ 17).  These claims should be dismissed because, based on the undisputed facts, they are meritless and wholly unsupported.

### 3.      Plaintiff's Untimely Claims Must Be Dismissed

Plaintiff alleges that he was discriminatorily demoted in 1996, given a poor performance evaluation in 1996, and denied a promotion to a senior laboratory technician position in 1998 in violation of Title VII.  (Statement ¶¶ 14, 16, 55).  All such allegations are untimely and must be dismissed.

Under Title VII, a claimant must file a discrimination charge with the Equal Employment Opportunities Commission within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local agency, within 300 days of the alleged act of discrimination.  42 U.S.C. § 2000e-5(e)(1); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).  Failure to comply with the statutory deadline for filing renders a complaint of discrimination moot.  Butts v. New York Dep't of Hous., 990 F.2d 1397, 1401 (2d Cir. 1993).  "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed."  United Air Lines v. Evans, 431 U.S. 553, 558 (1977).  In other words, if it is not brought in a timely manner, it is treated as if it never occurred.  It becomes an "event in history which has no present legal consequences."  Id.  Accordingly, only the acts which occurred 300 days before the date a plaintiff files his administrative charge are actionable.  National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).

In this case, Plaintiff did not file a complaint with the CHRO until March 24, 2000, and is therefore barred from alleging any claims of discrimination prior to May 29, 1999

(300 days before March 24, 2000).  (Statement ¶ 33).  Consequently, HP Hood seeks judgment

as a matter of law on Plaintiff's untimely allegations that he was demoted and given a poor

performance evaluation in 1996, and denied a promotion in 1998.

### 4.    Plaintiff's Remaining Claims of National Origin Discrimination Are Baseless

Title VII prohibits discrimination because of an individual's national origin.  42

U.S.C. § 2000e-2(a)(2).  In order to withstand summary judgment on his allegations of national

origin under Title VII against HP Hood, Plaintiff must first establish a *prima facie* case of

discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973).  See also de la Cruz v. NYC Human Resources Admin. Dep't of Social Servs.,

82 F.3d 16, 20 (2d Cir. 1996) (applying McDonnell Douglas test to a national origin claim under

Title VII).  To do so, Plaintiff must show:  (1) he is a member of a protected class; (2) he is

qualified for the position; (3) he was subjected to an adverse employment decision; and (4) the

circumstances give rise to an inference of discrimination.  McDonnell Douglas Corp., 411 U.S.

at 802.  "[T]he plaintiff cannot meet this burden through reliance on unsupported assertions," but

"must come forward with evidence that would be sufficient to support a jury verdict in his

favor."  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

If Plaintiff establishes a *prima facie* case, the burden shifts to HP Hood to offer a

legitimate, nondiscriminatory reason for its actions.  Reeves v. Sanderson Plumbing Prods., 530

U.S. 133, 142 (2000).  At this stage, HP Hood need only proffer, not prove, the existence of a

nondiscriminatory reason for its employment decisions.    Texas Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 255-256 (1981).  See also Fisher v. Vassar College, 114 F.3d 1332, 1337

(2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998) (holding that the presumption of

discrimination disappears once the employer has proffered a legitimate business reason for the

action).  Once HP Hood has met its light burden of "production, not persuasion," Plaintiff has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Reeves, 530 U.S. at 142-143 (citing Burdine, 450 U.S. at 253).  See also Farias v. Instructional Sys., Inc., 259 F.3d 91, 99 (2d Cir. 2001) (summary judgment granted because the plaintiffs did not produce any evidence of national origin or race discrimination to rebut the defendant's legitimate, nondiscriminatory grounds for its actions).

"Although the intermediate evidentiary burden shifts back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves, supra at 143 (citing Burdine, supra at 253).  Moreover, "proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct" because "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."  Reeves, supra at 146-147 (internal quotations omitted, emphasis in original) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 524 (1993)).

For the reasons detailed below, Plaintiff cannot establish a *prima facie* case because he cannot identify any evidence that gives rise to an inference of discrimination under the McDonnell Douglas burden-shifting framework.  In essence, Plaintiff asserts that he was born in Armenia, so the Court should conclude that he was discriminated against.  This is insufficient to avoid summary judgment because conclusory allegations, such as Plaintiff's alleged *belief* that his national origin was a motivating factor in HP Hood's decision to document his performance problems and ultimately discharge him without any supporting evidence is not

sufficient to sustain a claim of discrimination.  See also Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (summary judgment affirmed where "Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient." (internal citations omitted)).

Even if Plaintiff could establish a *prima facie* case, under Reeves, he is unable to show that HP Hood's legitimate, nondiscriminatory reason for its actions – his poor job performance and failure to improve -- is a mere pretext for discrimination.

### a.    Plaintiff Was Not Harassed On The Basis Of His National Origin

Plaintiff alleges that he was subjected to "outrageous forms of harassment." (Compl. ¶ 3).  To sustain a hostile work environment claim under Title VII, Plaintiff must establish that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (citations omitted) (analyzing hostile work environment claim under Title VII).  To determine whether a work environment is sufficiently hostile or abusive to support liability under Title VII, courts examine all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, (1993).  "[I]n order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive."  Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.5 (2d Cir. 1995).  The alleged harassing conduct "must be extreme to amount to a change in terms and conditions of employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

An "objectionable environment must be both *objectively* and *subjectively* offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. at 787 (emphasis added). To satisfy the objective component of the analysis, the conduct must be offensive or pervasive enough to create an environment that a reasonable person would find hostile or abusive. Torres v. Pisano, 116 F.3d 625, 631 (2d Cir.), cert. denied, 522 U.S. 997 (1997). Similarly, the plaintiff must actually perceive the employment environment as abusive. Harris, 510 U.S. at 21-22. In evaluating claims of hostile work environment harassment, courts must keep in mind that Title VII is not a "general civility code." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (citation omitted; internal quotations omitted).

According to Plaintiff, the grounds for his allegation that he was "harassed" are: (1) Ms. Carroll asked him to answer the telephone[5]; (2) his coworkers did not say "hi" or "bye," but Mr. Medlock sometimes said "hi"; (3) he was isolated by a glass room divider because Mr. Medlock and Ms. Carroll placed pictures, paper towel boxes, a radio, and speakers up to cover up the window because they did not want to see him (yet the second shift laboratory technician was not a "foreigner," and worked in the same space); (4) he was not told anything; (5) Mr. Medlock favored Ms. Carroll over him because Mr. Medlock was friends with Ms. Carroll and Plaintiff did not drink or party with Mr. Medlock or Ms. Carroll[6]; and (6) his belief that Defendants did not like him. (Statement ¶ 59). None of these allegations rise to the level of an actionable harassment claim. Tomka, 66 F.3d at 1305 n.5.

---

[5] Plaintiff made this allegation prior to May 4, 1999. (Statement ¶ 56). To the extent that Plaintiff alleges that he was harassed before May 29, 1999, his claim is untimely and may not be considered. See Section A(1), above. Even if it was timely, HP Hood promptly investigated this claim and both Mr. Syrett and Mr. Brown determined that Plaintiff was merely alleging "common everyday issues that were misunderstandings or normal mistakes or responses." (Statement ¶ 56).

[6] Plaintiff alleges that Mr. Medlock and Ms. Carroll invited him to go out to drink and party and that he declined. (Statement ¶ 60).

Plaintiff is also unable to identify <u>any</u> discriminatory statements made to him about his national origin.  (Statement ¶ 61).  In place of actual evidence that Plaintiff was discriminated against because of his national origin, he relies completely on speculation and his unsupported conclusion that Defendants did not like him.  For example, in response to requests for the basis for his belief that Defendants discriminated against him, Plaintiff stated, "[b]ecause they didn't like me.  They didn't want I train.  There got to be some reason, my age, my origin, whatever."; "I didn't have other reason.  I didn't have a tail or horns."  (Statement ¶ 63).

Even if Defendants disliked Plaintiff, the law does not allow such a claim because personal dislike is different from national origin discrimination.  In <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62 (2d Cir. 2001), the Second Circuit held that a plaintiff's allegations "that her supervisor and several co-workers formed 'a little clique of Irish people and they would talk about being Irish a lot,' and that she was 'out of the loop' . . . fall well short of the sort of 'materially adverse change in the terms and conditions of employment' that entitles a plaintiff to damages under Title VII."  <u>Id.</u> at 84 (citation omitted).  Moreover, "[c]ourts do not possess the power to compel co-workers to like each other."  <u>Sands v. Runyon</u>, 28 F.3d 1323, 1331 (2d Cir. 1994) (internal quotation omitted).  Accordingly, Plaintiff's claim must be dismissed because the alleged incidents fail, as a matter of law, to establish a claim of actionable harassment.

### b.    Plaintiff Received Frequent Training From HP Hood

Plaintiff alleges that he was denied training, and that the training he received was provided "half-heartedly" after he filed a complaint with the CHRO on March 24, 2000.  (Compl. ¶ 17).  Plaintiff, however, received frequent training before and after March 24, 2000.

Prior to March 24, 2000, Plaintiff received training from Mr. Brown on the testing system and formulations prior to and during November 1999 to help him improve his

14

performance after he received a poor evaluation in October 1999. (Statement ¶ 24). Additionally, Mr. Medlock allowed Plaintiff to choose his trainer. (Statement ¶ 23). When Mr. Brown and Ms. Carroll documented Plaintiff's poor technique in performing tests in November 1999, Plaintiff received training on testing procedure on November 30, 1999 and December 7, 1999. (Statement ¶¶ 25-27). Likewise, after he received a written warning from Mr. Brown on January 24, 2000 for failing to follow the proper testing procedures, HP Hood provided Plaintiff with even more training. (Statement ¶ 30). Again, he was allowed to train with the trainer of his choice, Mr. Brown, and temporarily transfer to the second shift. (Statement ¶ 30).

On March 7, 2000, Mr. Medlock determined that Plaintiff would continue to receive training in mix formulation procedures on a daily basis. (Statement ¶ 31). As a result, right before Plaintiff filed his first CHRO complaint on March 24, 2000, he received four days of training by Mr. Brown. (Statement ¶ 32). After that, Plaintiff received even more training. (Statement ¶ 34). In April of 2000 alone, Plaintiff trained for two weeks. (Statement ¶ 36).

This claim, like Plaintiff's other claims, is completely devoid of any merit. Plaintiff is unable to show that he did not receive any training prior to March 24, 2000 or that he only received training provided "half-heartedly" after he filed his CHRO complaint. As the CHRO concluded, HP Hood did not deny Plaintiff any training, but rather, provided him with more training than his co-workers. (Statement ¶ 50). Accordingly, Plaintiff's claim that he was denied training should be dismissed.

### c.    There Is No Evidence That Plaintiff Was Not Promoted Because of His National Origin

Although Plaintiff alleges that he was "denied promotions," he explained at his deposition that he was supposedly denied one promotion to a senior laboratory technician

position six to eight years ago by Mark Syrett (then Quality Control Manager). (Statement ¶ 55). As a preliminary matter, any such claim is time barred. See Section A(1).

Even if the claim was timely, Plaintiff admits that he never asked for a promotion or complained about a promotion. (Statement ¶ 56). Plaintiff also concedes that promotions were never automatically granted[7] but that qualifications were required -- "Knowledge, qualification, knowledge of the job, have enough education, good job performance and responsible." (Statement ¶ 57). To that extent, Plaintiff admitted in his deposition that Dave Falbo[8] should have received the position, and not him, because "[Mr. Falbo] was the only person qualified" for the senior laboratory technician position. (Statement ¶ 58).

Accordingly, Plaintiff cannot now claim that he was denied a promotion for a discriminatory reason when, as discussed above in Section A(2)(b), he needed training on a regular basis to try to correct his performance deficiencies. Furthermore, he alleges that he was not qualified for the position, but rather, an "American" white male under 40, should have been promoted. As such, any claim that Plaintiff was denied a promotion for discriminatory reasons should be dismissed.

> **d.    HP Hood Documented Plaintiff's Poor Performance And Ultimately Discharged Him For A Legitimate, Nondiscriminatory Reason -- His Failure To Properly Perform His Job Duties Properly Despite Repeated Training**

Plaintiff alleges that he received "unduly severe discipline for mistakes that were either non-consequential or caused by the deprivation of training opportunities." (Compl. ¶ 17). However, the undisputed facts show that Plaintiff continued to make mistakes despite of HP

---

[7] The CHRO found that there was no basis for Plaintiff's claim that he was denied promotions because he failed to show that HP Hood has a practice of promoting its employees when there were no open positions and the alleged promotion denied occurred in 1998 and was thus untimely filed. (Statement ¶ 50).

[8] Dave Falbo is an American white male in his late 30s who was employed as a second shift Senior Laboratory Technician. (Statement ¶ 58).

Hood's attempts to help him improve his performance by providing him with repeated, frequent training.  (Statement ¶ 48).  See Section A(2)(b).

To support his claim, Plaintiff relies on his belief that the "needs improvement" rating on his February 1996[9] performance evaluation was discriminatory.  (Statement ¶ 16).  Plaintiff believes that he should have received the maximum performance rating because that is how he would have rated himself.  (Statement ¶ 16).  He also alleges that his October 1999 performance review rating of "needs improvement" was discriminatory.  (Statement ¶ 23).  However, Plaintiff ignores the fact that his performance deficiencies were well documented prior to 1996 by numerous supervisors other than Mr. Medlock, and by his own admission, he did make mistakes.  (Statement ¶¶ 12, 48).

Curiously, although Plaintiff alleges that Mr. Medlock discriminated against him in 1996 for giving him a poor performance evaluation, he does not allege that Mr. Medlock's evaluations of him in 1997 and 1998 were discriminatory.  (Statement ¶ 17).  While Plaintiff contends that Mr. Medlock discriminated against him by giving him a poor performance evaluation in 1999, the evaluation was actually conducted by Mr. Brown, Mr. Medlock, and Ms. Carroll.  (Statement ¶ 22).

Plaintiff alleges, however, that Mr. Brown did not discriminate against him on any basis.  Plaintiff describes him as an honest and good man who does not lie, yet Mr. Brown documented Plaintiff's performance problems on numerous occasions.  (Statement ¶ 19).  Specifically, Mr. Brown: (1) wrote Plaintiff up in March 1999, stating, the "performance of [Plaintiff's] duties [was] not acceptable"; (2) issued Plaintiff a written warning for using "poor technique" when performing tests, failing to "successfully complete and send a formula for

---

[9] To the extent that Plaintiff alleges that his 1996 performance evaluation was discriminatory, Plaintiff's claim is untimely and may not be considered.  See Section A(1), above.

batching," obtaining "questionable results," and failing to properly develop formulas on November 16, 1999; and (3) provided Plaintiff with a written warning on January 24, 2000 for using the wrong procedure in a laboratory test.[10]  (Statement ¶¶ 18, 25, 28).

Ms. Carroll also documented Plaintiff's performance deficiencies.  Like Mr. Brown, on November 18, 1999, Ms. Carroll documented Plaintiff's poor technique in performing laboratory tests and his apparent inability to apply proper formulas on March 31, 2000.  (Statement ¶¶ 26, 35).

In May 2000, Plaintiff made a significant mistake when he reported a false positive test result showing that the product was not pasteurized, which was caused by his application of the wrong test to the product.  (Statement ¶¶ 37-38).  As a direct result of Plaintiff's critical error, production was shut down for 20 minutes, during which time approximately 100 employees stopped working and production was decreased by about 1, 200 containers of product.  (Statement ¶ 37).

Four months later, on September 14, 200), Plaintiff reported yet another incorrect test result to Ms. Carroll.  (Statement ¶ 39).  Plaintiff told Ms. Carroll that the product had the wrong amount of butterfat in it.  When Ms. Carroll retested the product, she determined that he had received the wrong result because the product's amount of butterfat was within acceptable margins.  (Statement ¶ 39).

After two "needs improvement" performance evaluations and numerous documented performance problems despite frequent repeated training, on December 20, 2000, Plaintiff was discharged due to his poor job performance.  (Statement ¶ 47).  As a result, Plaintiff claims should be dismissed because he is unable to establish an inference of discrimination.

---

[10] Plaintiff admits, "[he] didn't follow the [standard laboratory] procedure."  (Statement ¶ 29).

**e.      Plaintiff Offers No Evidence That HP Hood's Legitimate, Nondiscriminatory Reason Is A Pretext For Discrimination**

Even if Plaintiff's evidence was sufficient to establish a *prima facie* case of discrimination, HP Hood is entitled to summary judgment because Plaintiff cannot show that the company's reason for documenting his performance problems and terminating his employment was a pretext for discrimination.  See Reeves, supra at 143.

There is no genuine issue of material fact that Plaintiff made mistakes of a repetitive nature that were documented by numerous different supervisors.  (Statement ¶¶ 12, 16, 18-19, 22, 25-26, 28, 35).  Even if Plaintiff discounted the documentation of his performance problems, his perception of his own performance is insufficient to create a genuine issue of material fact as to whether HP Hood's articulated legitimate, nondiscriminatory reason for documenting his performance inadequacies and ultimately discharging him for them is pretextual.  See Byrnie v. Town of Cromwell Pub. Sch., 73 F. Supp. 2d 204, 214 (D. Conn. 1999) (finding that plaintiff's own opinions about his qualifications "fall short of establishing a dispute about the genuineness of the Selection Committee's assessment of his qualifications") (citing to Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 (10th Cir. 1999) (holding that plaintiff's own opinions about her qualifications and the fairness of the interviewers' assessments of her was not evidence of pretext), rev'd on other grounds, 243 F.3d 93 (2d Cir. 2001)); Ost v. West Suburban Travelers Limousine, Inc., 88 F.3d 435, 441 (7th Cir. 1996) (holding that "[i]t is well settled, however, that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions").  Plaintiff is unable to rebut HP Hood's legitimate reasons with his subjective belief that he was discriminated against because he can think of no other reason for HP Hood's actions.  (Statement ¶ 63).  See Lizardo, 270 F.3d at 104.

Nor can Plaintiff create a material issue of fact by challenging HP Hood's business judgment. It is not the role of this Court to review or second guess the fairness or merit of a company's personnel decisions. See Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997). The undisputed evidence establishes that HP Hood provided Plaintiff with more than adequate training to try to correct his poor performance yet Plaintiff was still having problems with basic formulas. In light of Plaintiff's failure to improve his job performance, HP Hood discharged him. Plaintiff cannot avoid the consequences of his conduct or meet the Reeves burden by challenging the fairness of HP Hood's decision without a shred of evidence that the company was motivated by discrimination.

I.    **HP Hood Is Entitled To Summary Judgment As To Count Two (Violation Of Section 1981) Because Defendants Did Not Discriminate Against Plaintiff On The Basis of His Race**

Plaintiff alleges that Defendants denied him the equal right to make and enforce contracts and to all laws and proceedings in violation of Section 1981. (Compl. ¶ 21). Under Section 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts,[11] to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a).

To prevail on his claim under Section 1981, Plaintiff must prove: (1) that he is a member of a racial minority; (2) that the defendant intended to discriminate against him based on his race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

---

[11] "Make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (b).

20

Plaintiff's claim must fail because he does not allege that he was discriminated against because of his race. Instead, he alleges that he was discriminated against because of his Armenian national origin. (Statement ¶ 64). Although the United States Supreme Court has held that the definition of race may include other races such as Jews and Arabs, a plaintiff may not make out a case under Section 1981 if his claim is based solely on the "place or nation of his origin." St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) (holding that the plaintiff could bring a claim under Section 1981 if he could prove that he was subjected to intentional discrimination because he was an Arab, but not if his claim was based on his national origin or religion); Shaare Teflia Congregation v. Cobb, 481 U.S. 615, 617-618 (1987) (recognizing cognizable Section 1981 claims for Jews and Arabs who allege racial discrimination only if they can prove intentional discrimination solely because of their ancestry or ethnic characteristics). Likewise, in the Second Circuit, "[Section 1981] does not prohibit discrimination on the basis of national origin." Ghose v. Century 21, Inc., 12 Fed. Appx. 52, 55 (2d Cir. 2001) (court affirmed summary judgment for the defendants because the plaintiff based his claim under Section 1981 for discrimination because of his Bangladeshi origin). Because Plaintiff admits his race is white and bases his claim solely on his belief that he was discriminated against because of his Armenian national origin, his claim must fail. (Statement ¶ 64).

Even if Plaintiff were able to prove that he is within a protected class as defined by Section 1981, he is unable to show that he was denied equal terms and conditions of his employment or the full and equal benefit of the law because of his race, as required by Section 1981. Mian v. Donaldson, Lufkin & Jenrette Sec., 7 F.3d at 1087. As discussed in detail in Section A(2) above, despite Plaintiff's assertions that he was harassed, denied training and a promotion, poorly evaluated, and discharged for a discriminatory reason, he is unable to produce

21

any evidence showing that he was subjected to an adverse employment action under any circumstance that would give rise to an inference of discrimination. Nor does Plaintiff offer any evidence to rebut Defendants' legitimate, nondiscriminatory reasons for their actions – Plaintiff's poor job performance. See Section A(2)(e). In sum, because Plaintiff has not offered any evidence that could even arguably constitute a violation of Section 1981, Count Two must be dismissed as a matter of law.

**J.      HP Hood Is Entitled To Summary Judgment As To Count Three (Violation Of The ADEA) Because Plaintiff's Claims of Age Discrimination Are Meritless**

The ADEA prohibits employers from discriminating in employment against individuals who are at least 40 years of age but less than 70 years of age. 29 U.S.C. §§ 623(a)(1), 631(a). ADEA claims are analyzed under the same framework as claims brought under Title VII. Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)).

Under the McDonnell Douglas test, Plaintiff must establish a *prima facie* case showing that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he was subjected to an adverse employment decision; and (4) the circumstances give rise to an inference of discrimination. Woroski, 31 F.3d at 108 (citation omitted). Once Plaintiff does so, the burden shifts to HP Hood to offer a legitimate, nondiscriminatory reason for its actions. See Reeves, supra at 142. Plaintiff must then prove that HP Hood's reason was not its true reason, but merely a pretext for age discrimination. Id. at 143 (citing St. Mary's Honor Ctr., 509 U.S at 507-508). To prevail on his claim of age discrimination, Plaintiff must show that his age "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). "[T]here is

no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."  Id.  See also Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir.), cert. denied, 525 U.S. 1001 (1998) ("[A] jury cannot infer discrimination from thin air."); Graefenhain v. Pabst Brewing Co., 827 F.2d 13, 20-21 (7th Cir. 1987) ("A business decision need not be good or even wise.  It simply has to be nondiscriminatory, for the only kind of business decision that the ADEA prohibits is a business decision that discriminates against the aged.")

Plaintiff's claim of age discrimination is similar to his national origin claim in that he alleges that he was discriminatorily harassed, denied training and a promotion, poorly evaluated, and discharged, albeit this claim relies on his belief that these alleged actions were taken against him because of his age.  Just as Plaintiff was unable to identify any evidence to support his claim of national origin discrimination, he cannot produce any evidence of age discrimination to support such a claim.

Plaintiff cannot identify any age-based harassment.  (Statement ¶ 62).  See also Section A(2)(a); Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999) (applying Title VII hostile work environment analysis to age based animus).  He admits that Defendants did not make any discriminatory comments about his age.  (Statement ¶ 62).  Instead, he speculates that no one liked him and it might be due to his age.  (Statement ¶ 63).  However, the decision-makers are in the same protected age group as Plaintiff.  (Statement ¶¶ 6, 9-11). Because Plaintiff's claim of age-based harassment is based on mere speculation and no evidence, it must be dismissed.

Similarly, Plaintiff's claim that he was denied training due to his age must fail when he admitted that he received training on a regular basis.  See Section A(2)(b).  In fact,

Plaintiff actually received more training than his co-workers did and was allowed to choose who would train him. (Statement ¶¶ 23, 30, 50). Plaintiff's allegation that he was denied a promotion in 1998 also fails because it is time-barred and he has admitted that another individual, rather than him, should have received the promotion because he was not qualified for the position. (Statement ¶¶ 55, 58), <u>See</u> Sections A(1) and A(2)(c).

Likewise, any claim by Plaintiff that his performance was documented because of age-based animus is baseless. <u>See</u> Section A(2)(d). Plaintiff received "needs improvement" performance evaluations in 1996 and 1999 for the simple fact that his performance needed improvement. (Statement ¶¶ 16, 22). Numerous *different* supervisors, including a supervisor whom Plaintiff concedes did not discriminate against him, chose to document his performance problems solely because Plaintiff could not properly perform his job. (Statement ¶¶ 12, 16, 18-19, 22, 25-26, 28, 35). When it became apparent that Plaintiff's performance was not improving, Dr. Poole chose to terminate his employment. (Statement ¶ 47). Plaintiff's age had nothing to do with his discharge. (Statement ¶ 47).

Moreover, all of the individual Defendants are over forty years of age. Dr. Poole is 47 years old, Mr. Kershner is 61 years old, Mr. Medlock is 56 years old, and Ms. Carroll is 42 years old. (Statement ¶¶ 6, 9-11). In the Second Circuit, "[w]here the decision-makers are also in the protected age group an inference may be drawn that there is no age-based animus." <u>Giordano v. Gerber Scientific Products, Inc.</u>, No. 399CV00712, 2000 U.S. Dist. LEXIS 22178, *20 (D. Conn. Nov. 14, 2000),[12] <u>aff'd</u>, 24 Fed. Appx. 79, 82 (2d Cir. 2001). <u>See also</u> <u>Millane v. Becton Dickinson & Co.</u>, 84 F. Supp. 2d 282, 287 (D. Conn. 1999) (there was no inference of age discrimination where one of the decision makers was a year younger than the plaintiff and

---

[12]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 25.

both decision makers were in the protected class). Under <u>Giordano</u>, these undisputed facts undermine any reasonable inference of age discrimination.

Not only did HP Hood state a legitimate, nondiscriminatory reason for its actions (the company's decisions were based on Plaintiff's own poor performance despite the numerous opportunities that were provided to him to improve), Plaintiff offers no evidence that HP Hood's reason is pretextual. <u>See</u> Section A(2)(e). Instead, Plaintiff admits that he made mistakes during his employment, but must have been discriminated against because he would have assessed his performance differently. (Statement ¶¶ 16, 48). Such self-serving statements without evidentiary support cannot prevent the entry of summary judgment. Accordingly, HP Hood is entitled to summary judgment because just as Plaintiff was unable to identify any support for his claim of national origin discrimination, he cannot show an inference of age discrimination or that HP Hood's reason for documenting his poor performance and discharging him was a pretext for age discrimination.

**K.  Count Four (Retaliation In Violation Of Title VII, the ADEA, and Section 1981) Should Be Dismissed Because HP Hood Did Not Retaliate Against Plaintiff**

**1.  Plaintiff Offers No Evidence To Show That He Was Retaliated Against In Violation of Title VII or The ADEA**

Plaintiff claims that the termination of his employment resulted from retaliation by HP Hood for his "protected conduct." (Compl. ¶ 24). These claims are meritless and wholly unsupported by the evidence. Title VII and the ADEA protects individuals who have opposed a prohibited practice made unlawful, filed a charge or participated or testified in an investigation, proceeding or litigation under the Acts. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Claims of retaliation brought under Title VII or the ADEA are analyzed under the familiar <u>McDonnell Douglas</u> burden-shifting framework. <u>See e.g.</u>, <u>Tomka</u>, <u>supra</u> at 1308 (applying the <u>McDonnell</u>

Douglas test to retaliation under Title VII); Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001) (applying the McDonnell Douglas test to retaliation under the ADEA). To establish a *prima facie* claim of discrimination, Plaintiff must show participation in a protected activity known to HP Hood, an adverse employment action, and a causal connection between the protected activity and the adverse employment action. Id. Once Plaintiff establishes a *prima facie* case, HP Hood must proffer a legitimate, nondiscriminatory reason for its actions and then the burden shifts back to Plaintiff to show pretext. Tomka, supra at 1308; Slattery, 248 F.3d at 94-95. As with Plaintiff's claims of national origin and age discrimination, Plaintiff's *prima facie* claim of retaliation fails. Plaintiff cannot show any causal connection between his complaint of discrimination and HP Hood's termination of his employment or show that HP Hood's proffered reason was mere pretext.

As set forth in detail in Section A(2) above, the undisputed facts plainly show that Plaintiff was terminated for his ongoing performance deficiencies and repeated failure to adequately perform the necessary functions of his position. Plaintiff is unable to establish a causal connection between his complaint of discrimination on March 24, 2000 and discharge on December 20, 2000 because the alleged retaliatory event was too far removed from the protected activity to establish such a connection. See Clark County School District v. Breeden, 532 U.S. 268, 273 (2001) (no retaliation found where twenty months passed between protected activity and transfer) (quoting O'Neal v. Ferguson Construction Co., 237 F.3d 1248, 1253 (10th Cir. 2001) (causal connection where the plaintiff was fired one day after he sent a letter from his attorney)), (citing Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 2001) (affirming summary judgment for the employer because a three month lapse between protected activity and termination was insufficient to establish a causal connection)). See also Hughes v. Derwinski,

967 F.2d 1168,1174-75 (7th Cir. 1992) (affirming summary judgment for the employer because four months between discrimination complaint and disciplinary letter was not temporally close enough to support an inference of causal connection).

Furthermore, in <u>Slattery</u>, the Second Circuit rejected a plaintiff's argument of temporal proximity because it determined that the company had engaged in "an extensive period of progressive discipline" and held, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." <u>Slattery</u>, <u>supra</u> at 95.

Under both <u>Clark County School District</u> and <u>Slattery</u>, because Plaintiff's performance problems were initially noted prior to any alleged protected activity and became glaringly obvious in 1999, yet Plaintiff received repeated training to improve his performance and remained employed until December 20, 2000, almost nine months after the filing of his first CHRO complaint,[13] the temporal proximity of the two events is too far removed to support his claim of retaliation. In addition, Plaintiff is unable to produce any evidence to show that HP Hood's reason for discharging him was pretextual. Consequently, HP Hood is entitled to summary judgment as to Plaintiff's claim of retaliation under Title VII and the ADEA.

**2.      Plaintiff Lacks Standing to Raise a Viable Section 1981 Retaliation Claim**

Plaintiff also alleges that HP Hood violated Section 1981 by retaliating against him for filing a CHRO complaint; however, he is precluded from raising a retaliation claim because he did not raise a cognizable Section 1981 claim of race discrimination. <u>See</u> Section B. To bring an actionable Section 1981 retaliation claim, "the retaliation must have been in response to the [plaintiff's] assertion of rights that were protected by Section 1981." <u>Hawkins v.</u>

---

[13] Plaintiff cannot claim retaliation based on his second CHRO complaint because he did not file it until February 16, 2001, two months after he was discharged. (Statement ¶ 52).

1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998).  See also Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 689 n. 1 (8th Cir. 1997) (plaintiff had no standing to sue for retaliation because gender-based claims are not cognizable under Section 1981)).

In Choudhury v. Polytechnic Institute of New York, 735 F.2d 38 (2d Cir. 1984), the plaintiff, an Asian Indian tenured professor, filed a complaint with the federal and state administrative agencies alleging race discrimination.  Id. at 40.  The plaintiff then alleged that the defendant retaliated against him for filing the complaint.  Id. The Second Circuit held that the plaintiff had standing to sue for retaliation under Section 1981 only because he had properly asserted his rights under Section 1981.  Id. at 43-44.

As set forth in detail in Section B, Plaintiff did not state a cognizable claim because he alleges national origin discrimination, which Section 1981 does not protect against. Moreover, unlike the plaintiff in Choudhury, Plaintiff never alleged race discrimination in violation of Section 1981 when he filed his CHRO complaint on March 24, 2000.  (Statement ¶ 33).  Accordingly, Plaintiff lacks standing to assert a Section 1981 retaliation claim.  Even if Plaintiff did have standing, he cannot identify any discriminatory conduct that is protected by Section 1981.  See Section B.  Therefore, Plaintiff's claim of retaliation in violation of Section 1981 should be dismissed.

**L.    Count Five (Violation Of Conn. Gen. Stat. § 31-51q) Should Be Dismissed Because Plaintiff's Claim Is Preempted By Federal Law And He Cannot Show Retaliatory Discharge, And HP Hood Should Be Awarded Costs and Attorney's Fees For Defending An Unjustified Claim**

Plaintiff alleges that he was discharged for engaging in union organizing activity and complaining about falsified laboratory testing results in violation of Conn. Gen. Stat. § 31-51q.  (Compl. ¶ 26).  Plaintiff's claims do not fall within Conn. Gen. Stat. § 31-51q, an anti-retaliation statute that prohibits an employer from subjecting any employee to "discipline or

discharge" on account of the exercise of constitutionally protected rights because his claim is preempted and he can show no causal connection. Because Plaintiff's claims fail as a matter of law, HP Hood seeks costs and attorney's fees under the statute.

> **1.      Plaintiff's Claim Of Retaliatory Discharge For Engaging In Union Organizing Activity Is Preempted By The National Labor Relations Act**

Plaintiff claims that HP Hood fired him in retaliation for his speaking out about Defendants' anti-union sentiment and participating in union organizing activity. (Compl. ¶ 26). This claim is preempted by federal law and warrants dismissal because the National Labor Relations Board ("NLRB") has exclusive primary jurisdiction to decide disputes concerning allegations of unfair labor practices as defined by Section 8 of the National Labor Relations Act of 1935, as amended ("NLRA").

Section 7 of the NLRA provides, in relevant part, "[e]mployees shall have the right to self organization, to form, join or assist labor organizations . . . " 29 U.S.C. § 157. Section 8(a)(1) of the NLRA prohibits employers from interfering, restraining or coercing employees in the exercise their rights under section 7. 29 U.S.C. § 158(a)(1). A violation of section 8(a)(1) is established if: (1) the employee's activity was concerted; (2) the employer was aware of its concerted nature; (3) the activity was protected by the NLRA; and (4) the adverse personnel action was motivated by the protected activity. NLRB v. Oakes Machine Corp., 897 F.2d 84, 88 (2d Cir. 1990) (citation omitted).

"[W]hen the controversy at issue involves activity that is even arguably subject to sections 7 or 8 of the NLRA, the Garmon doctrine dictates that federal labor law preempt state regulation and that the NLRB have primary and exclusive jurisdiction over the controversy." Bimler v. Stop & Shop Supermarket Co., 965 F. Supp. 292, 297 (1997) (explaining 29 U.S.C. § 160 and San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-245 (1959)).

In <u>Bimler</u>, the court dismissed a Conn. Gen. Stat. § 31-51q claim in which an employee alleged that she was suspended for exercising her right to free speech as to union matters after she had met with her co-workers and a manager to discuss working conditions because it fell within the primary and exclusive jurisdiction of the NLRB.  <u>Bimler</u>, 965 F. Supp. at 298.

Plaintiff conceded that his claim fell with the NLRB's jurisdiction when he filed a complaint with the NLRB on March 2, 2001.  (Statement ¶ 53).  To the extent that Plaintiff's claim under Conn. Gen. Stat. § 31-51q is based on any allegation that he was retaliated against for engaging in union organizing activities, it warrants dismissal by this Court because like the plaintiff in <u>Bimler</u>, Plaintiff's claims are preempted by the NLRA and fall within the exclusive and primary jurisdiction of the NLRB.

**2.    Plaintiff Cannot Show A Causal Connection Between His Complaint About A Laboratory Result And His Discharge**

Plaintiff also alleges that he was fired in retaliation for criticizing HP Hood's purported failure to comply with state regulation of milk production and falsification of laboratory results and data.  (Compl. ¶ 26).  To sustain any such claim, Plaintiff must prove that: (1) he was exercising rights protected by the first amendment to the United States Constitution; (2) he was fired on account of exercising such rights; (3) his exercise of his first amendment rights did not substantially and or materially interfere with his bona fide job performance or with his working relationship with his employer."  <u>Lowe v. Amerigas, Inc.</u>, 52 F. Supp. 2d 349, 359 (D. Conn. 1999), <u>aff'd</u>, 208 F.3d 203 (2d Cir. 2000).

In <u>Lowe</u>, the court granted summary judgment to the employer where a plaintiff complained about his employer's allegedly improper storage of propane but was unable to show that his complaints were a "substantial or motivating factor in the employer's decision to

30

discharge him." <u>Lowe</u>, 52 F. Supp. 2d at 359-360.  The court granted summary judgment for the employer because the plaintiff was unable to produce any evidence showing a causal connection between the disciplinary action against him and his exercise of a constitutional right.  <u>Id.</u> at 360.

This case is factually similar to <u>Lowe</u>.  Plaintiff testified that the sole basis for his claim is his complaint on September 14, 2000 to HP Hood that Ms. Carroll changed the numbers of one butterfat test result after he reported an improper amount of butterfat in the product.  (Statement ¶¶ 39, 65).  A full investigation into Plaintiff's claims determined that there was no basis for his allegation because Plaintiff had received the wrong test result.  (Statement ¶¶ 39, 45).  Plaintiff was not terminated until two months later.  (Statement ¶ 47).  He cannot show any causal nexus between his complaint about one laboratory test and his discharge when the undisputed facts clearly show that he was discharged for his repeated failure to properly perform his job, which was documented over a long period of time.  (Statement ¶ 47).  <u>See also</u> Section A(2).  Without any demonstration of retaliation by HP Hood, Conn. Gen. Stat. § 31-51q is inapplicable on its face based on the undisputed facts and warrants dismissal.

### 3.    HP Hood Is Entitled To Costs And Attorney's Fees Because Plaintiff Brought a Claim Under Conn. Gen. Stat. § 31-51q Without Substantial Justification

Conn. Gen. Stat. § 31-51q provides that if a court determines that an action for damages was brought under the statute "without substantial justification," the court may award costs and attorney's fees to the employer.  Plaintiff's claim falls into this category.  Plaintiff fails to allege the elements necessary to make out a claim under Conn. Gen. Stat. § 31-51q because federal law preempts his claim of retaliatory discharge for union organizing activity; he was discharged because of his poor performance, not because he exercised a constitutional right; and he cannot show any causal connection between a complaint about a laboratory test and his

discharge nine months later.  Plaintiff's Conn. Gen. Stat. § 31-51q claim is substantively meritless and his failure to institute this action with any justification, much less the "substantial justification" required by Conn. Gen. Stat. § 31-51q, entitles HP Hood to costs and fees in accordance with the statutory provision.

  **M. Count Eight (Defamation) Warrants Dismissal Because Defendants Did Not Publicize An Unprivileged False Statement.**

    Plaintiff alleges that Defendants defamed him by maliciously publicizing "rumors" that he was incompetent to perform his duties to other employees, supervisors present at his discharge, actual and potential employers, and through written memoranda placed in his personnel file at the time of his discharge.  (Compl. ¶¶ 31–36).

    "Defamation is defined as, an intentional communication, either published or publicly spoken, that injures another's reputation or good name; the unprivileged publication of false statements which naturally and proximately result In [*sic*] injury to another." Olumide v. Travelers Insurance Co., No. CV910505575, 1994 Conn. Super. LEXIS 265, * 16 (Conn. Super. Ct. Feb. 3, 1994)[14] (quoting Black's Law Dictionary 417 (6th ed. 1990, internal quotation omitted)).  For a statement to be defamatory, a plaintiff must "prove a negligent *misstatement of fact*." Miles v. Perry, 11 Conn. App. 584, 588 (1987) (emphasis added).

    An expression of opinion is nonactionable and, as a matter of law, is insufficient to state a claim for defamation.  Perruccio v. Arseneault, 7 Conn. App. 389, 394 (1986).  See also Daley v. Aetna, 249 Conn. 766, 795 (1999).   An opinion is "a personal *comment* about another's conduct, qualifications or character that has some basis in fact."  Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 111 (1982) (emphasis in original; citation omitted). Accordingly, statements concerning work performance are merely expressions of opinion and,

---

[14]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 26.

therefore, are not actionable as defamation.  See e.g., Perruccio, 7 Conn. App. at 394 (assertion

that plaintiff was a "dictator" was a statement of opinion insufficient to sustain claim for

defamation); Scandura v. Friendly's Ice Cream Corp., Inc., No. CV930529109, 1996 Conn.

Super. LEXIS 1642, *15 (Conn. Super. Ct. June 26, 1996)[15] (holding that mere expressions of

the plaintiff's competence as a manager were not defamatory); Torok v. Proof, No.

CV900113204, 1993 Conn. Super. LEXIS 266, *6-7 (Conn. Super. Ct. Feb. 1, 1993)[16] (statement

that the plaintiff was not a good accountant was an expression of opinion and, therefore, did not

constitute a defamatory statement).    As a general rule, a statement "may properly be

characterized as opinion [where] it is not objectively capable of being proven true or false."

Perruccio, supra at 394.  Whether a statement is an expression of fact or opinion "is a question of

law for the court to determine." Dow v. New Haven Independent, Inc., 41 Conn. Supp. 31, 38

(1987).

   A plaintiff must also prove publication of an unprivileged defamatory statement.

Miles, 11 Conn. App. at 601 n.11.   "Publication" requires that a false statement was

communicated to someone other than the plaintiff.  Grynkiewicz v. Freight Liner of Hartford,

No. CV990497586, 2000 Conn. Super.  LEXIS 129, *2-3 (Conn. Super. Ct.  Jan.  12, 2000)[17]

(citations omitted).  The publications of false statements may be privileged.  "[C]ommunications

between managers regarding the review of an employee's job performance and the preparation of

documents regarding an employee's termination are protected by a qualified privilege.  Such

communications and documents are necessary to effectuate the interests of the employer in

---

[15]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 27.

[16]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 28.

[17]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 29.

efficiently managing its business." <u>Torosyan v. Boehringer Ingelheim Pharm., Inc.</u>, 234 Conn. 1, 29 (1995).

Plaintiff's defamation claim fails on several grounds. First, he admits that he cannot show the existence of a defamatory statement. Second, even if he could identify a defamatory statement by Defendants about his job performance and subsequent discharge, any such discussion was privileged. Finally, Plaintiff cannot offer any evidence of defamatory statements made to any actual or potential employers because he never sought a reference from HP Hood or repeated any alleged defamatory statements to an actual or potential employer.

### 7. Plaintiff Cannot Show Any Defamatory Discussions By Defendants Regarding His Job Performance

Plaintiff's defamation claim fails because he is unable to identify one person who called him incompetent as a laboratory technician. (Statement ¶ 66). He is also unable to identify any employee who was questioned about his performance. (Statement ¶ 67). Even if he were able to identify any such statement, his claim would still fail because any discussion held by the Defendants about his job performance would merely be an expression of opinion. <u>Torok</u>, 1993 Conn. Super. LEXIS 266 at *6-7. Moreover, any such communication by Defendants amongst HP Hood's management about Plaintiff's job performance is privileged. <u>Torosyan</u>, 234 Conn. at 29.

### 8. Ms. Carroll's Statements About The Plant Shutdown Were Not Defamatory

According to Plaintiff's own testimony, there can be no claim for defamation based on Ms. Carroll's statements about the plant shutdown on May 1, 2000. Plaintiff claims that it was inferred he was incompetent when Ms. Carroll shut down production, but describes Ms. Carroll's actions and statements as "Nancy called paging system, said 'Product is contaminated. Don't use it. Everybody stop.' They come over there. 'What is it?' They heard

it. We open new bottle." (Statement ¶ 68). There can be no reasonable inference that Plaintiff was incompetent when Ms. Carroll merely requested that the plant be shut down because of the positive test result. (Statement ¶¶ 37, 68). Further, Plaintiff testified that his co-workers believed the third shift cleaning crew had caused the problem. (Statement ¶ 38). Accordingly, Plaintiff has no proof of any defamatory statement that was made with malice, improper motive, or bad faith.

### 9.     Dr. Poole's Request That Plaintiff Return Formula Taken From HP Hood Was Not Defamatory

Plaintiff alleges that Dr. Poole falsely accused him of stealing formula at an investigatory meeting with only Dr. Poole, Mr. Kershner, and himself present. (Statement ¶ 69). However, Dr. Poole only asked Plaintiff to return HP Hood's formula because he told her that he had taken notes, the formula, and a sample from the plant. (Statement ¶ 43). All such information is confidential and proprietary information. (Statement ¶ 43). To effectuate the interests of HP Hood, Dr. Poole was required to ask Plaintiff to return HP Hood's property immediately. Dr. Poole had a qualified privilege to ask Plaintiff questions when she was investigating his claims. Plaintiff is unable to show any evidence that Dr. Poole asked for the formula with knowledge of its falsity or reckless disregard for the truth when he told her he took it. Likewise, he is unable to identify anyone else who heard her ask him to return the formulation. (Statement ¶ 69). There was therefore no publication of the alleged statement as only Dr. Poole, Mr. Kershner, and Plaintiff were present at the meeting. Plaintiff cannot claim that anyone publicized any statement that he "stole" the formula.

10.    **No Defamatory Statement Was Made to Plaintiff During His Discharge**

Plaintiff was discharged for his poor job performance.  (Statement ¶ 47).An opinion as to Plaintiff's job performance cannot be characterized as a negligent misstatement of fact.  Scandura, 1996 Conn. Super. LEXIS 1642 at *15.  Again, a qualified privilege attaches as only Plaintiff, Dr. Poole, Mr. Kershner, and Mr. Medlock were present.  Torosyan, supra at 29. Plaintiff is also unable to identify any defamatory written document which was supposedly placed in his personnel file.  (Statement ¶ 71).

11.    **Plaintiff Has No Evidence That Defendants Spread A Rumor About Him To His Former Co-Workers Or To Any Employers**

Plaintiff alleges that Defendants spread a "rumor" that Mr. Medlock and Ms. Carroll did not like him, but cannot identify who started it.  (Statement ¶ 72).  A rumor that someone does not like you is not defamatory and Plaintiff has no evidence that Defendants started any such rumor or made any non-privileged statements to anyone.  See Wormley v. Blue Cross and Blue Shield of Conn., Inc., No. CV96368735, 1996 Conn. Super. LEXIS 1550, *17 (Conn. Super. Ct. Mar. 12, 1996)[18] (summary judgment granted where the plaintiff could not offer any evidence that the employer started a rumor that the plaintiff was fired for embezzlement).  In addition, Plaintiff never asked Defendants for a reference and Defendants did not discuss Plaintiff with any actual or potential employer.  (Statement ¶ 73).  Accordingly, Plaintiff's claims fail as a matter of law.

12.    **Plaintiff's Claim of "Compelled Self-Defamation" Fails Because Connecticut Does Not Recognize Such A Cause of Action.**

Plaintiff also alleges that he has been compelled to disclose the purported defamatory statements to actual and potential employers.  (Compl. ¶ 35).  Plaintiff's claim fails

---

[18]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 30.

as a matter of law because Connecticut does not recognize a "compelled self-defamation" cause of action by an employee who repeats his former employer's reasons for terminating him to prospective employers.  <u>Cweklinsky v. Mobil Chem. Co.</u>, 267 Conn. 210, 212-213 (2004).  Even if this were a viable cause of action, Plaintiff's claim fails because he concedes that he did not repeat HP Hood's reason for discharging him to any other employers.  (Statement ¶ 73).

### N.    Count Nine (Intentional Infliction Of Emotional Distress) Should Be Dismissed Because His Claims are Untimely And Defendants Did Not Engage In Any Extreme And Outrageous Behavior

#### 1.    Plaintiff's Claim As To Ned Kershner Should Be Dismissed Because It Is Barred By The Statute Of Limitations

Plaintiff alleges that Mr. Kershner solely intentionally inflicted emotional distress on him in 1996 when Mr. Kershner investigated Plaintiff's allegation that he was demoted from a laboratory inspector position and determined that his claim was groundless.  (Statement ¶ 74).  Under Conn. Gen. Stat. § 52-577, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

Plaintiff did not raise this claim until he filed his Complaint dated May 31, 2002.  Pursuant to Conn. Gen. Stat. § 52-577, Plaintiff may not raise a claim for any intentional tort prior to June 1, 1999 (three years before Plaintiff filed his complaint) because it is barred by the statute of limitations.  Consequently, this claim as to Mr. Kershner must be dismissed.

#### 2.    Plaintiff's Remaining Claims Must Be Dismissed Because He Does Not Allege Any Extreme And Outrageous Behavior

Plaintiff's claim against Dr. Poole arises from his allegation that she accused him of stealing HP Hood's formulations.  (Statement ¶ 75).  Plaintiff alleges that Mr. Medlock and Ms. Carroll intentionally inflicted emotional distress on him because they turned their back on him, slammed the door, and did not give him phone calls.  (Statement ¶ 76).

To prevail on his claim for intentional infliction of emotional distress, Plaintiff must prove each of the following elements:  (1) that Defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that Defendants' conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by Plaintiff was severe.  Petyan v. Ellis, 200 Conn. 243, 253 (1986).

To state a claim of intentional infliction of emotional distress, it is the act itself, not the motivation for the act, which must be outrageous.  See Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 123 (D. Conn. 1998) (holding that an employer's act, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior); Emanuele v. Boccaccio & Susanin, No. CV900379667, 1994 Conn. Super. LEXIS 3156, *6-7 (Conn. Super. Ct. Dec. 1, 1994)[19] (allegations that an employer made false statements about plaintiff's work performance and used threats and intimidation to force her to sign a document against her will for the purpose of depriving her of benefits and compensation did not constitute "extreme and outrageous conduct.")

"The 'extreme and outrageous' standard is a high one:  'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'."  Reed v. Town of Branford, 949 F. Supp. 87, 92 (D. Conn. 1996) (quoting Restatement 2d of Tort § 46, comment d (1965)).  Conduct is deemed extreme and outrageous where it "exceeds all bounds usually tolerated by a decent society."  Appleton v. Board of Educ. of Stonington, 254 Conn. 205, 210 (2000) (citation omitted).  Whether a

---

[19]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 31.

defendant's conduct rises to the level of extreme and outrageous is initially a question for the Court. Id. at 210.

Connecticut courts have defined the boundaries of "extreme and outrageous conduct" very narrowly. See e.g., Id. at 211 (the defendants' condescending comments to the plaintiff in front of her colleagues about her vision and ability to read; telephoning plaintiff's daughter, representing that the plaintiff "had been acting differently" and should take a few days off from work; and telephoning the police, who came to the school and escorted plaintiff out of the building, did not rise to the level of "extreme or outrageous conduct"); Rock v. Mott Metallurgical Corp., No. CV990492215, 2001 Conn. Super. LEXIS 207, *16-19, 32-33 (Conn. Super. Ct. Jan. 10, 2001)[20] (allegations that the plaintiff's supervisor called her stupid and lame-brained and referred to her as an idiot; where she was made the subject of ridicule by being used as an example of a poor employee on a daily basis; was falsely accused of not completing her assigned tasks and screamed at by her supervisor; and told by a co-worker to "fu** herself" did not rise to the level of "extreme and outrageous conduct").

In DeLeon v. Little, 981 F. Supp. 728 (D. Conn. 1997), the plaintiff alleged that her supervisor repeatedly degraded and criticized her in front of other co-workers; showed animosity towards her because of her racial and ethnic status and political affiliation; threatened to replace her with a member of another race; and compelled her to perform personal errands, purchase illegal drugs, and stand guard while the supervisor ingested drugs. Id. at 731. The court held that "[w]hile Defendant's alleged conduct may have been rude, inappropriate, or even criminal, it does not rise to the level of extreme and outrageous as required by Connecticut common law." Id. at 738. Similarly, in Thompson v. Service Merchandise, Inc., No.

---

[20] A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 32.

396CV1602, 1998 U.S. Dist. LEXIS 13669 (D. Conn. Aug. 11, 1998),[21] this Court granted judgment to the employer on the plaintiff's intentional infliction of emotional distress claim, despite the plaintiff's allegations that the employer targeted her for termination because of her race, failed to provide adequate supervision and sufficient staff to do her job, and removed responsibilities from her in order to undermine her authority.  Id. at *2-3, 14.

> None of the actions Plaintiff identifies to support his emotional distress claim constitute the "extreme and outrageous conduct" requisite to a viable intentional infliction of emotional distress claim.   Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress set forth in Count Nine.

## VII.    CONCLUSION

> For all of the foregoing reasons, Defendants HP Hood LLC, Tom Medlock, Ned Kershner, Nancy Carroll, and Dr. Margaret Poole respectfully request that this Court grant their motion for summary judgment on all remaining counts of the Amended Complaint.

DEFENDANTS,
HP HOOD LLC, TOM MEDLOCK,
NED KERSHNER, NANCY CARROLL
AND MARGARET POOLE


By:    _____
       Tasos C. Paindiris (ct 16739)
       Jackson Lewis LLP
       55 Farmington Avenue, Suite 1200
       Hartford, CT  06105
       Tel: (860) 522-0404
       Fax: (860) 247-1330
       paindirt@jacksonlewis.com

---

[21]  A true and correct copy of this decision is attached to the Paindiris Affidavit as Exhibit 33.

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the foregoing was sent by first class mail, postage

prepaid, on this 15th day of July, 2004, to the following counsel of record:

> Paul M. Ngobeni
> 914 Main Street
> Suite 206
> East Hartford, CT  06108


_____

Tasos C. Paindiris

59467