UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 JAN -3  P 4: 21
U.S. DISTRICT COURT
HARTFORD, CT.

SAMAD DAROUIAN,

  Plaintiff,

v.          CASE NO. 3:02CV927(RNC)

HP HOOD, INC., ET AL.,

  Defendants.

RECOMMENDED RULING ON MOTION FOR SUMMARY JUDGMENT

  The plaintiff commenced this action on May 31, 2002 alleging that he was harassed, denied training and promotion, poorly evaluated and fired because of his national origin, age and free speech in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 631 et seq., 42 U.S.C. § 1981 and Conn. Gen. Stat. § 31-51q. Pending before the court is defendants' motion for summary judgment (doc. #82). The plaintiff did not file an opposition to the motion. For the reasons set forth below, the court recommends that the motion be granted.

I. FACTUAL BACKGROUND

  The plaintiff is a sixty-four year old white male of Armenian

---

[1]The plaintiff did file a "Motion to Strike Portions of Defendants' Rule 54(a)(i) Statement, Exhibits, and the Affidavits of Attorney Tasos Paindiris in Support of Summary Judgment Motion" on September 27, 2004 (doc. #95). That motion was denied by this court on November 16, 2004 (doc. #101).

descent.[2] He worked for the defendant HP Hood, Inc. ("Hood") from 1981 until he was terminated in December, 2000. Plaintiff worked primarily as a laboratory technician, but also briefly held the position of laboratory inspector.

Hood terminated the plaintiff for poor performance. Plaintiff's performance problems began as early as 1982, and were documented on several occasions thereafter. By 1996, plaintiff's performance issues became more frequent. In that year, defendant Tom Medlock gave plaintiff a "needs improvement" on his performance evaluation. Medlock, a fifty-six year old white male, was the plaintiff's supervisor from 1992 through 1998 and again from 1999 through 2000.

In March of 1999, plaintiff's then-supervisor, Richard Brown, documented the plaintiff's poor performance during an incident on February 20, 1999. Brown indicated that plaintiff's performance was "unacceptable", and that the plaintiff would require additional training before he would be allowed to work again unsupervised. In

---

[2]The facts are taken from the defendants' uncontested 56(a)(1) Statement (doc. #84). Because the plaintiff failed to file a Local Rule 56(a)(2) statement, those facts are deemed admitted for the purposes of this motion. See e. g., Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984) (facts set forth in the statement of undisputed facts were properly deemed admitted given opposing party's failure to file a local rule statement of disputed material facts; entry of summary judgment appropriate); S.E.C. v. Global Telecom. Services, LLC, 325 F. Supp. 2d 94, 109 (D. Conn. 2004).

October 1999, plaintiff received another "needs improvement" evaluation. To help the plaintiff improve his performance, the defendant offered him additional training, with a trainer of his choice. Plaintiff chose Brown. Brown trained the plaintiff throughout the month of November, 1999.

After receiving the additional training, plaintiff received warnings from both Brown and Carroll on November 16 and 18, 1999, respectively. The warnings were given for "poor technique" in performing laboratory testing procedures. Brown provided the plaintiff with more training on November 30, 1999 and December 7, 1999. On January 24, 2000, plaintiff received another written warning from Brown for admittedly following the wrong procedure in a laboratory test for pasteurization. Defendant required plaintiff to go through additional training. Plaintiff requested, and was granted, permission to train with Mr. Brown during the second shift. Brown trained the plaintiff from January 2000 to March 2000.

On March 24, 2000, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Plaintiff alleged that he was poorly evaluated, harassed and not promoted based on his national origin, ancestry, age and alienage.

On March 31, 2000, defendant Carroll noted that plaintiff was having problems applying proper formulas, and that he "seems to have a hard time remembering how to change and calculate a formula

3

from day to day." Carroll recommended additional training, which was authorized by Medlock on April 3, 2000. Additional training was subsequently provided.

On May 1, 2000, the plaintiff reported that a product had not been pasteurized. This caused the shut down of an entire production line. After a review of the incident, defendant Carroll determined that the plaintiff had applied the wrong test. The product had been properly pasteurized. The mistake caused Hood to lose production of approximately 1,200 containers of product during the shut-down period.

On September 14, 2000, the plaintiff reported to Carroll that a product had an improper amount of butterfat in it. Carroll repeated the test and found that the product was acceptable. Afterward, plaintiff complained that Carroll had changed the numbers of the butterfat test result. Defendant Margaret Poole, a forty-seven year old white female and the Vice President of Research and Development at Hood, was unable to substantiate the plaintiff's allegation.

On October 13, 2000, the plaintiff met with Poole and defendant Ned Kershner, the Director of Human Resources at Hood. Kershner is a sixty-one year old white male. Poole discussed with the plaintiff her concerns that plaintiff was not properly performing routine procedures, resulting in inconsistent test results. On December 20, 2000, Kershner and Poole again met with

the plaintiff and informed him that his employment was terminated due to poor job performance. Poole made the decision to terminate the plaintiff.

II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of showing the absence of any genuine dispute of material fact.[3] See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party opposing a . . . motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 324). The court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.

---

[3]Upon review of the uncontested evidence cited by defendants in their Local Rule 56(a)(1) statement, the court is satisfied that defendants' citations to the record support their assertions. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 243 (2d Cir. 2004) citing Giannullo v. City of New York, 322 F.3d 139, 143 n. 5 (2d Cir. 2003)) (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

5

2000). However, mere conclusory allegations are insufficient to overcome a motion for summary judgment. See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

III. DISCUSSION

    A.    Employment Discrimination Claims

In counts one, two and three of the amended complaint, the plaintiff alleges discrimination based on his national origin, race and age, respectively. Employment discrimination claims are analyzed using the three-step burden shifting framework adopted in McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802-05 (1973).[4] The plaintiff has the initial burden of making a prima facie case by showing that he belongs to a protected class, was performing his duties satisfactorily, and suffered an adverse employment action in circumstances supporting an inference of discrimination. If that showing is made, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the challenged action. If such a reason is articulated, the burden shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination.

---

[4]Plaintiff's employment discrimination claims under Title VII, 42 U.S.C. § 1981 and the ADEA are all governed by the same burden-shifting analysis set forth in McDonnell Douglas. See Monte v. Ernst & Young LLP, 330 F. Supp. 2d 350, 361 n.3 (S.D.N.Y. 2004) (the burden-shifting analysis of McDonnell Douglas applies equally to claims under 42 U.S.C. § 1981 and Title VII); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S. Ct. 613, 621, 83 L. Ed. 2d 523 (1985) (court analyzes ADEA claims under same framework as claims brought pursuant to Title VII).

Plaintiff's initial burden of establishing a prima facie case is minimal. See McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Although defendants have presented undisputed evidence showing that the plaintiff was not performing his duties satisfactorily, the court cannot find that, as a matter of law, plaintiff has failed to establish a prima facie case of discrimination. Given his nearly twenty year tenure with Hood and the fact that he was terminated after filing a CHRO charge, the plaintiff has met this minimal burden.

If the plaintiff establishes a prima facie case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997). Defendants have offered evidence that plaintiff was terminated because of a history of poor performance that was not alleviated by significant additional training.

When, as here, the employer meets its burden of articulating a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must prove by a preponderance of the evidence that the employer's proffered explanation is unworthy of credence (i.e., that the true reason for the employer's action was discrimination). See id. This burden-shifting framework is a mechanism for resolving the ultimate question in an employment discrimination case, which is whether the evidence offered can reasonably and logically give rise to an inference of

discrimination under all of the circumstances. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999).

After a thorough review of the record, the court concludes that there is no evidence that defendants' legitimate, non-discriminatory reason for plaintiff's termination is a pretext. Plaintiff has not proffered any evidence that he was performing his job satisfactorily or that the documentation of his performance problems was incorrect. During his deposition, plaintiff stated that the reason he thought that he had been discriminated against was that he could not think of any other reason for his treatment. Plaintiff's own beliefs about his performance, however, do not establish a genuine issue of material fact. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 & n.13 (10th Cir.1999) (holding that plaintiff's own opinion about her qualifications was not evidence of pretext), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). There is no direct or circumstantial evidence in the record that would support a finding of pretext.[5] The court recommends that summary judgment be granted on counts one, two and three.

---

[5]Plaintiff's claim under 42 U.S.C. § 1981 fails for the additional reason that it is based solely on his national origin, not his race. 42 U.S.C. § 1981 does not prohibit discrimination on the basis of national origin. St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987).

B.   Retaliation

Count Four alleges retaliation in violation of Title VII, the ADEA and 42 U.S.C. § 1981. Retaliation claims are also analyzed using the burden-shifting analysis in McDonnell Douglas. To make out a prima facie case of retaliation, a plaintiff must show that he was engaged in protected activity, the employer was aware of the activity, the employee suffered an adverse employment action and there was a causal connection between the protected activity and the adverse action taken by the employer. Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003). If the plaintiff can make out a prima facie case, the burden shifts to the defendant "to articulate a 'legitimate, nondiscriminatory reason' for its actions." Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991) (citation omitted). If the defendant is successful, "the plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered reason merely a pretext for impermissible retaliation." Richardson v. N.Y. State Dep't Corr. Serv., 180 F.3d 426, 444 (2d Cir. 1999).

Plaintiff has failed to establish even a prima facie case of retaliation. He has not established a causal connection between the filing of his CHRO charge in March, 2000 and his ultimate termination nine months later in December. See Clark County Sch. Dist. V. Breeden, 532 U.S. 268, 273-74 (2001) (holding that to establish causal connection, temporal proximity between filing of complaint and termination must be "very close" and noting that

9

periods of three or four months were insufficient). Even after filing his CHRO charge, Hood provided plaintiff with additional training in an effort to improve his job performance. Assuming plaintiff could establish a prima facie case, he has not, as stated above, rebutted defendants' legitimate, nondiscriminatory reason for his termination. The court recommends that summary judgment be granted on count four.

C. Conn. Gen. Stat. § 31-51q

In count five plaintiff alleges that he was discharged for engaging in union organizing activity and complaining about falsified laboratory testing results in violation of Conn. Gen. Stat. § 31-51q. To the extent count five is based on plaintiff's efforts to collectively organize a union at Hood, it falls within the protections of the National Labor Relations Act ("NLRA"). See 29 U.S.C. § 158(a)(1). As such, the claim is preempted by federal law. See Bimler v. Stop & Shop Supermarket Co., 965 F. Supp. 292, 299 (D. Conn. 1997) ("[b]ecause the plaintiff's claim involves conduct that is arguably prohibited under the NLRA, it falls within the primary and exclusive jurisdiction of the NLRB"). The remaining allegations relate to complaining about falsified laboratory testing results. Those allegations fail because plaintiff was discharged for poor performance--not for asserting his free speech rights. There is no evidence that plaintiff was discharged for complaining about falsified laboratory testing results. The court recommends that summary judgment be granted

with regard to count five.

D. Defamation

Count eight asserts a claim for defamation. In the Amended Complaint plaintiff alleges that defendants "maliciously published false rumors of incompetence by plaintiff to other employees and published to other employers, actual and potential, false and defamatory statements that the plaintiff was incompetent to perform his duties as a laboratory technician." Defendants contend that they did not publish any defamatory statements. Defendants argue that any statements they did make were either privileged or are statements of opinion that do not rise to the level of defamation.

A defamatory statement is "defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . ." Craig v. Stafford Constr., Inc., 271 Conn. 78, 84 (2004) (citation omitted). To prove a claim of defamation, a plaintiff must establish that (1) the defendant published a defamatory statement, (2) the defamatory statement identified the plaintiff to a third person, (3) the defamatory statement was published to a third person, and (4) the plaintiff's reputation suffered injury as a result of the statement. Id.

Statements of opinion, including evaluations and other statements about job performance, are generally not sufficient to state a claim for defamation. See Perruccio v. Arseneault, 7 Conn.

11

App. 389, 394 (1986) (holding that an assertion of "dictator leadership' was not defamatory because it was an opinion, not a false statement of fact); Torok v. Proof, No. CV 90-0113204, 1993 WL 28878 at *2 (Conn. Super. Ct. 1993) (statement that plaintiff "was not a good accountant" not defamatory); Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 552 (D. Conn. 1996) (opinions regarding plaintiff's job performance, including statements made to recruiters, were mere opinion not sufficient to state a claim for defamation). Communications between managers regarding employee job performance and the circumstances surrounding termination are also protected by a qualified privilege. See Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 29 (1995).

Plaintiff does not identify any specific defamatory statements made by the defendants. Rather, he alleges in a conclusory fashion that defendants published statements about his incompetence. First, there is no evidence in the record that such statements were ever made. Second, even if they were made and were not subject to a privilege, those statements are expressions of opinion about the plaintiff's job performance. Such statements do not, as a matter of law, rise to the level of defamation. See Perruccio, 7 Conn. App. at 394. The court recommends that summary judgment be granted on count eight.

12

E. <u>Intentional Infliction of Emotional Distress</u>

Count Nine alleges intentional infliction of emotional distress. In order to prove such a claim, the Connecticut Supreme Court has stated that a plaintiff must demonstrate the following:

> 1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

<u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." <u>Appleton v. Board of Educ. Of Town of Stonington</u>, 254 Conn. 205, 210 (2000). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> at 210-11 (internal quotation marks omitted) (citing 1 Restatement (Second) of Torts § 46, comment (d) (1965)).

The plaintiff's allegations do not meet this standard. The evidence in the record demonstrates that the plaintiff was disciplined and ultimately terminated for poor performance. None of the evidence supports the plaintiff's assertion that the defendants acted in an extreme and outrageous manner. The court recommends that summary judgment be granted on count nine.

13

IV.  CONCLUSION

For these reasons, the court recommends that the defendants' motion for summary judgment (doc. #55) be GRANTED.  Plaintiff's counsel is ORDERED to deliver a copy of this recommended ruling to his client.

Any party may seek the district court's review of this recommendation.  See 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992)(failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

SO ORDERED at Hartford, Connecticut this 3rd day of January, 2005.

　　　　　　　　　　　　　　　　　Donna F. Martinez
　　　　　　　　　　　　　　　　　United States Magistrate Judge